**L.J. DRAGOVIC, M.D.**
*Forensic Pathologist & Neuropathologist*
*44 Beverly Road, Grosse Pointe Farms, MI  48236*
Bus. Ph.: (248) 858-4046  FAX: (248) 452-9173
Cell: (313)617-1334

August 5, 2013

David G. Blake, Esq.
Romano Law PLLC
26555 Evergreen Road, Suite 1500
Southfield, MI 48076

    Re:  Jackson vs. Washtenaw County, et al.
         Your File No. 350842

Dear Mr. Blake:

Pursuant to your request I have reviewed the following materials in reference to the above captioned matter:

1) The Complaint & Demand for Jury Trial
2) The deceased Stanley Jackson's EMS records and the records from St. Joseph Mercy Hospital, Ann Arbor, dated 08/20/10
3) The incident report issued by Security Department of Saint Joseph Mercy Health System
4) The University of Michigan/Washtenaw County Medical Examiner report of the autopsy performed on Stanley Jackson (WME-10-588), issued by Drs. Jentzen and Cassin, with attached toxicology report issued by A.I.T. Laboratories
5) The autopsy photographs
6) The autopsy microscopic slides
7) The Certificate of Death, issued by Dr. Jentzen
8) The Washtenaw County Sheriff's Office reports
9) The report of Michigan State Police investigation of the incident
10) The Washtenaw County Prosecutor's review of the investigation of the incident
11) The reports of Michigan State Police investigations of prior criminal activities of the Plaintiff's deceased Stanley Jackson

It is quite clear from the above listed materials that the 31 year old African-American, Stanley Jackson, was apprehended by the police officers after continued surveillance indicated his involvement in suspected illegal activity. Since Mr. Jackson, who was 6' 1" and weighed 270 pounds, resisted the arrest, several officers used the Electronic Control Devices (Tasers) to facilitate his subduing and restraint. The physical restraint consisted of back-handcuffing and binding of his ankles. Mr. Jackson reportedly continued to be combative during his transport by Huron Valley Ambulance to St. Joseph Hospital, in Ann Arbor, Michigan. Reportedly, Mr. Jackson continued being combative in the hospital Emergency Department, where the hospital security personnel assisted in maintaining further his continued restraint.

-2-

While apparently no videotaped documentation of the activities that took place in the Emergency Department has been available, it was reported that sometime after unspecified interval of physical immobilization and an intra-muscular injection of Ativan (Lorazepam) Mr. Jackson was found to be lifeless and was pronounced dead after aggressive resuscitation attempts.

The post mortem examination of Mr. Jackson's remains was conducted by the Washtenaw County Medical Examiner's Office and the cause(s) of death were certified as:
> Ia. Sudden Cardiac Arrest
> Ib. Non-occlusive Ischemic Heart Disease associated with Adrenergic Reaction to Stress
>
> II. Police arrest with EMDD deployment

The manner of Mr. Jackson's death was certified as *natural*.

Notwithstanding the logical contradictions in the above listed certification, there are some significant discrepancies in the autopsy report and the autopsy microscopic slides that should be clarified. In fact, there is nothing in the anatomical findings of the autopsy that substantiates the listed diagnoses, except for the external/ surface of the skin injuries resulting from the darts of the ECD (Taser) used in the initial phase of the arrest. It is well known fact that the ECD (Taser) has only a transient effect on a human body and only within that limited interval a physiologic opportunity exists for a potential capture of the electrical conduction impulses to the lower chambers of the heart[1]. Hence, it is misleading, in my opinion, to include the imagined effect of the ECD (Taser) as a contributory cause of death of Stanley Jackson.

There was no anatomical or laboratory evidence generated by the post mortem examination to substantiate the "Adrenergic Reaction to Stress" theory. Furthermore, a dubious claim of the reported finding of "contraction-band necrosis" is not supported by my review of the autopsy microscopic slides containing sections from Mr. Jackson's heart muscle. I also, believe that the reported "Acute hemorrhage, AV node" represents a resuscitation-related artifact. Also, the reported thickness of the free wall of the left ventricle was "2cm", while a simple measuring of the width of the full-thickness section of the left ventricle wall of the heart mounted on the autopsy microscopic slide shows only 1.5cm thickness.

It is perplexing that the obviously grossly abnormal lungs (R- 960gms; L-870gms) of Mr. Jackson deserved no more than "The lungs are diffusely congestion, otherwise unremarkable" in the microscopic description, without even mentioning otherwise very much evident granulomatous inflammation and quite extensive intra-alveolar hemorrhage.

The EMS personnel documented a laceration (tear) of Mr. Jackson's tongue, yet the autopsy report indicates "a superficial 0.5 laceration to the left lower lip", without making any anatomical reference to the tongue anywhere in the document.

-3-

In spite of the theoretical possibility of the proposed, albeit non-defined cause and mechanism of Mr. Jackson's death, the *manner of death* cannot be classified as *natural* for the simple reason that Mr. Jackson died while physically restrained and physical restraint cannot be considered a natural condition.

Without knowing the intricate details of what actually happened in the emergency room of St. Joseph Hospital, I cannot exclude the possibility of position/compression asphyxia as a cause of death in this case.

I trust this answers your query.

Sincerely

L. J. Dragovic, MD, FCAP, FAAFS

---

Reference:
1. Zipes, D.P.: Sudden Cardiac Arrest and Death with Application of Shocks from a Taser Electronic Control Device, Circulation, publ. by American Heart Association, April 30, 2012