**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**PEARLIE JACKSON, PERSONAL**
**REPRESENTATIVE OF THE**
**ESTATE OF STANLEY JACKSON,**

        Case No. 12-10963

    **Plaintiff,**

        Hon. Denise Page Hood

v.

**COUNTY OF WASHTENAW, et al.,**

    **Defendants.**
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT,**
**MOOTING MOTION TO STRIKE EXPERT**
**AND**
**DISMISSING ACTION**

**I.   BACKGROUND**

On March 2, 2012, Plaintiff Pearlie Jackson, Personal Representative of the Estate of Stanley Jackson, filed a Complaint against Defendants Washtenaw County and several deputies with the Sheriff's Department alleging: Constitutional Deprivation, 42 U.S.C. § 1983 (Count I); Liability as to Defendant Washtenaw County, 42 U.S.C. § 1983 (Count II); and Gross Negligence, Willful and Wanton Misconduct, Assault, Battery, Intentional Infliction of Emotional Distress (Count III).

Defendants were conducting surveillance of Mr. Jackson's home on August 20, 2010. Defendants chased decedent in his driveway and into his home. Plaintiff

asserts Mr. Jackson was tasered on four occasions. He was transported to St. Joseph Mercy Hospital and shortly after arriving at the hospital, Mr. Jackson was pronounced dead.

The autopsy report notes that while Mr. Jackson was in the Emergency Room, he was observed to be alert and oriented, but continued to be agitated, aggressive and combative. (Pg ID # 308) Mr. Jackson was administered 2 mg of Larazepam injection intramuscularly in the right thigh for agitation. Mr. Jackson developed cardiac arrest approximately two minutes later and the rhythm deteriorated to ventricular fibrillation and finally asystolic. Mr. Jackson was thereafter pronounced dead. The death was certified as due to sudden death resulting from non-occlusive ischemic heart disease associated with acute adrenergic stress reaction. The application of the Electronic Electromechanical Device darts may have contributed in providing external stress. (Pg ID # 308)

This matter is before the Court on Defendants' Motion for Summary Judgment and to Strike Plaintiff's Expert Ernest Burwell. Responses and replies have been filed to the motions.

## II. ANALYSIS

### A. Defendants' Motion for Summary Judgment

#### 1. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*,

3

477 U.S. at 248.

## B. Fourth Amendment Constitutional Violation Claim

### 1. Qualified Immunity

#### a. Law

The individual deputies assert they are entitled to qualified immunity as to the Fourth Amendment excessive force claim.

Government officials are entitled to qualified immunity where their actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Green v. Reeves*, 80 F.3d 1101, 1104 (6th Cir. 1996) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an initial threshold question the court is required to rule on early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.*

The Supreme Court in *Saucier v. Katz* instituted a two-step inquiry to determine qualified immunity which inquiry was to be performed sequentially. In *Pearson v.*

*Callahan,* 555 U.S. 223 (2009), the Supreme Court abandoned the requirement that the inquiry must be performed sequentially. Although courts are free to consider the questions in whatever order is appropriate, the Supreme Court ruled that the two questions announced in *Saucier v. Katz* remain good law and that it is often beneficial to engage in the two-step inquiry. *Pearson,* 555 U.S. at 236.

The first inquiry to determine qualified immunity is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show the official's conduct violated a constitutional right. *Siegert v. Gilley,* 500 U.S. 226, 232 (1991). "To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati,* 953 F.2d 1036 (6th Cir. 1992). The following requirements must be met: (1) the conduct at issue must have been under color of state law; (2) the conduct must have caused a deprivation of constitutional rights; and (3) the deprivation must have occurred without due process of law. *Nishiyama v. Dickson County,* 814 F.2d 277, 279 (6th Cir. 1987). As § 1983 is not itself a source of substantive rights, and only a method for vindicating federal rights elsewhere conferred, a plaintiff must set forth specific constitutional grounds for asserting a § 1983 claim. *Graham v. Connor,* 490 U.S. 386, 393-394 (1989); *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).

If no constitutional right would have been violated, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201. If a violation could be made out, the next step is to determine whether the right was clearly established in light of the specific context of the case, not as a broad general proposition. *Id.* Under the doctrine of qualified immunity, an official will not be found personally liable for money damages unless the official's actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. The "clearly established" rights allegedly violated by the official cannot be considered at an abstract level, but must be approached at a level of specificity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 639 (1987). "Reasonableness" is a question of law to be decided by the trial court. *Jeffers v. Heavrin*, 10 F.3d 380 (6th Cir. 1993).

"The right to be free from excessive force is a clearly established right. Excessive force claims are to be analyzed under the Fourth Amendment's 'objectively reasonable' test, not under a substantive due process standard." *Walton v. City of Southfield*, 995 F.2d 1311, 1342 (6th Cir. 1993) (citing *Graham v. Connor*, 490 U.S. 386 (1989)). Plaintiff claims that the individual Defendants used excessive force

when Mr. Jackson, having been subdued and pinned down by the deputies, was punched in the face and tasered multiple occasions.

### b. Punching Mr. Jackson

Plaintiff's first excessive force claim is that Mr. Jackson was punched in the face. It is clearly established that putting exceptional pressure on a suspect's back while that suspect is in a face-down prone position after being subdued and/or incapacitated, constitutes excessive force. *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 904 (6th Cir. 2004). The Michigan State Police investigation report states that Mr. Jackson was being held down by two Defendants (without identifying which in the response) both of whom were squatting on Mr. Jackson and straddling his calves. The MSP report identifies Deputy Urban and "another" deputy straddling Mr. Jackson's calves. (Resp., Ex. C) However, Plaintiff does not submit any exhibits, deposition testimony, affidavit or report that Mr. Jackson was punched or hit in any manner by any Defendant. Defendants' motion for summary judgment was supported by evidence that Mr. Jackson was resisting law enforcement at the time of their encounter with him, but there is no evidence submitted by Plaintiff that Mr. Jackson was punched in the face. Plaintiff's excessive force claim that Mr. Jackson was punched in the face must be dismissed.

### c. Taser

The main crux of Plaintiff's excessive force claim is the multiple use of a taser on Mr. Jackson after he was seized. Plaintiff asserts Mr. Jackson was already subdued when the taser was used on him. Plaintiff claims that Mr. Jackson posed no threat to the Defendants or anyone else at the scene. Plaintiff claims Mr. Jackson was not attempting to flee when Defendants seized him. Defendants assert that Mr. Jackson was resisting law enforcement and continued to do so when he was transported to the hospital by medical personnel.

Sixth Circuit precedent dating back to 1994, indicates that spraying a suspect with mace–then the equivalent of later-developed sprays and electroshock devices–can amount to excessive force if used unreasonably against a non-resisting suspect. *Schmalfeldt v. Roe,* 412 Fed.Appx. 826, 828 (6th Cir. Feb. 23, 2011)(citing *Adams v. Metiva,* 31 F.3d 375, 387 (6th Cir. 1994)). Using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed does not amount to excessive force. *Hagans v. Franklin County Sheriff's Office,* 695 F.3d 505, 509 (6th Cir. 2012). Even if the taser shocks contribute to a suspect's death, this does not override the standard of care analysis used at the time of the arrest. *Id.* at 511. "In determining whether there has been a violation of the Fourth Amendment, [the court must] consider not the extent of the injury inflicted but whether an officer subjects a detainee to gratuitous violence." *Id.*, quoting *Miller v. Sanilac Cnty.,* 606 F.3d 240, 252 (6th

Cir. 2010). The court must grant qualified immunity when an officer has not violated clearly established law. *Id.*

Defendants admit that there were four electronic control devices (ECDs or Tasers) used on Mr. Jackson by Deputies Urban and Mercure. They claim that Mr. Jackson was part of a felony drug bust and that he attempted to evade arrest by flight, running from police into his house. (Doc. No. 28, Ex. 1, Urban Report) Defendants argue that because he attempted to flee and resisted arrest, any force used by the deputies, including use of the tasers, was reasonable.

Plaintiff submits two expert reports to support her claim that the use of tasers on Mr. Jackson was unreasonable. The report by L.J. Dragovic, MD, FCAP, FAAFS, indicates that "it is misleading, in my opinion, to include the imagined effect of the ECD (Taser) as a contributory cause of death of Stanley Jackson." (Doc. No. 35, Dragovic Report) The expert report of Ernest Burwell states that the police, autopsy and hospital reports support that multiple taser activations were used on Mr. Jackson. Mr. Burwell opines that although the deputies perceived Mr. Jackson to be combative and resistive during the arrest, Mr. Jackson was struggling for his life, not against the deputies, because a person being tased cannot breathe properly. Mr. Burwell opines that "there were multiple Taser activation used on Stanley Jackson in probe mode for an excessive amount of time." (Doc. No. 35, Burwell Report, p. 6) Mr. Burwell goes

9

on to opine as to how tasers should be used and how the police should report such use. (Doc. No. 35, Burwell Report, p. 6)

Although Plaintiff's expert Dr. Dragovic's report does not support a finding that the taser caused Mr. Jackson's death, the issue before the Court is whether the use of the taser was unreasonable at the time it was used. The only evidence before the Court as to why the taser was used on multiple occasions is that Mr. Jackson fled from the deputies into the home and thereafter resisted arrest. There is no evidence submitted to the contrary, such as other witnesses' statements to the contrary. The Sixth Circuit case cited above and the cases cited by the defense all hold that the use of a taser on a non-resisting suspect is unreasonable. The expert reports addressing the proper use of taser and the procedures that should have been applied by the deputies do not go to whether Mr. Jackson was resisting at the time he was arrested. Plaintiff did not submit any evidence to create a genuine issue of material fact that the use of the taser, as admitted by the Defendants, was unreasonable, in light of the circumstances at the time of the incident. Although Mr. Jackson died when he was at the hospital after the taser was used on him, there is no evidence submitted that the taser was used unreasonably.

Based on the evidence submitted by the parties, the Court finds that Plaintiff has not created a genuine issue of material fact to rebut the evidence submitted by the

defense that the use of the Taser was reasonable. Plaintiff cannot establish a Fourth Amendment Excessive Force claim against the individual Defendants.

### 2. Municipal Liability

Because Plaintiff cannot establish a constitutional violation by the individual Defendants, Defendant Washtenaw County cannot also be held liable. Plaintiff in her response, does not dispute that even if such a violation was established, she did not respond to the defense's argument that Defendant Washtenaw County cannot be held liable on a failure to train theory.

In order for a municipality to be liable under Section 1983 there must be some evidence that "execution of [the] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691. Generally, the doctrine of *respondeat superior* has no application in a § 1983 claim absent an allegation that the defendants were following the government's policies or customs. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Rather, "the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation

of rights protected by the Constitution." *Monell,* 436 U.S. at 690.

The Supreme Court has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480 (1986). However, "an 'official policy' is one adopted by someone with 'final authority to establish municipal policy *with respect to the action ordered.*' " *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.,* 926 F.2d 505, 515 (6th Cir.1991) (quoting *Pembaur,* 475 U.S. at 481) (emphasis added). In other words, "[l]iability for unauthorized acts is personal; to hold the municipality liable, *Monell* tells us, the agent's action must implement rather than frustrate the government's policy." *Id.* A municipal employee is not a "final policymaker" unless his decisions "are final and unreviewable and are not constrained by the official policies of superior officials." *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir.1993).

### C. State Law Tort Claims

Based on the above, because no federal claims remain, the state law tort claims should also be dismissed. When a federal court dismisses plaintiff's federal law claim, it should then ordinarily dismiss the plaintiff's state law claims without reaching the merits. *Moon v. Harrison Piping Supply,* 465 F.3d 719, 728 (6th Cir. 2006).

**D.     Defendants' Motion to Strike Plaintiff's Expert Ernest Burwell**

Because the case is dismissed, the Motion to Strike Plaintiff's Expert from testifying at trial is moot.

## III.     CONCLUSION

The death of Mr. Jackson is tragic.  However, Plaintiff has not submitted sufficient evidence to create a genuine issue of material fact that Defendants' use of the taser on Mr. Jackson while he was resisting arrest was unreasonable.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(Doc. No. 28)** is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike Plaintiff's Expert **(Doc. No. 30)** is MOOT.

IT IS FURTHER ORDERED that all Defendants are DISMISSED and this action is DISMISSED with prejudice.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  February 12, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 12, 2015, by electronic and/or ordinary mail.

                         S/LaShawn R. Saulsberry
                         Case Manager